Mr. Sachs sued Ms. Adeli to deny her discharge pursuant to Section 727A2A, based on the contention that she had made a number of transfers, two groups of transfers, after he obtained a judgment against her, with intent to hinder delay in her release from prison. There's no dispute that the first group of transfers were made to avoid execution. The only issue is whether it was pursuant to some legal advice, but she testified point-blank that that's what she was doing. Well, there's a distinction with the difference there that the bankruptcy court looked at. Instead of just looking at did she make these transfers for any reason to stop Mr. Sachs from executing on assets, the bankruptcy court looked in and saw that her counsel, her New York counsel, and this wasn't disputed as a good finding of fact or disputed by Mr. Sachs on this appeal, looked and found that her counsel said, Look, Mr. Sachs may transgress the state that's in place and try to... Now, there was an order that was stating he's doing anything, and there's no evidence at all that he would violate a court order. Well, the evidence showed that her counsel in New York told her, Look, I shouldn't be telling you this, and this is the part that the appellate panel didn't go on to mention. It said, I shouldn't be telling you this, but I don't trust Mr. Sachs, meaning that they are imparting to her that he may violate the state, and you should temporarily move your assets into a friend's name to protect the status quo. There's no evidence, though, that he would violate a court order. Well, she, the bankruptcy court found, made a finding of fact that she, in good faith, believed, based on the advice of her counsel, that there may be an attempt to violate the state and to execute on the accounts. Now, the language that she said, counsel in New York told her, I shouldn't be telling you this, but the only way you can protect your assets is moving to California, I saw nothing in there that she said that Mr. Sachs was dishonest. Well, in the quote that was cited and seized upon by the appellate panel, they said, I shouldn't be telling you this, but I don't trust Mr. Sachs. And what Ms. Adele intuited from that information was that he may try to violate the state and levy on her assets, despite the fact that there's a state in place, and you should temporarily move them to the name of a friend to protect the status quo. Well, I thought the bankruptcy appellate panel said, or clearly implied, that she should have known when somebody tells you, I shouldn't be telling you this, that maybe that's something she shouldn't do, or it's against the law. That's what I'm saying, Your Honor, and this is the problem with the appellate panel's review of whether she relied on the advice of her counsel in good faith. The questions of whether a debtor does something with bad intent or relies on the advice of her counsel in good faith are both questions of fact. They're subject to a clearly erroneous fact. You know, in criminal law, we have a concept called willful blindness. Yeah. This is kind of the bankruptcy version of willful blindness. With respect to the first round of training. The first round. Well, that was almost a complete focus of the appellate panel, and that's what I'm addressing here. But even if there was a clear – the bankruptcy court's finding was clearly erroneous in light of these statements that we've been referring to, that doesn't put her out of the ballpark, does it? Well, the ruling of the appellate panel wasn't that those findings were clearly erroneous. The appellate panel made its determinations by applying a de novo standard of review and making it an issue of law. And in making it an issue of law, the bankruptcy appellate panel cited some cases, and all those cases are distinguishable from this case. In the Camacho case, the debtor admitted that I'm – I'm sorry, Your Honor? She did not restore the assets until after she'd filed the bankruptcy. Is that correct? That's correct, Your Honor. And in that – that goes to the ADIB defense. It was first laid out by this court, the so-called Disclose and Recover defense. And I'd like to discuss that with Your Honors. Because it may be dicta in that case, but in that case, this was an involuntary bankruptcy, so there was not necessarily any time in the BB for the individual to restore the assets. She planned her bankruptcy. She could very well have restored the assets before she started the bankruptcy. That's right, Your Honor. And this is another one of the comedy of errors that unfortunately happened in Ms. Adele in this case by getting a number of pieces of bad advice from her counsel. It wasn't disputed in the bankruptcy court that her counsel told her over and over again, just leave the transfers where they are. Just leave the transfers where they are. So as was the case in ADIB where he couldn't plan when he filed his bankruptcy because it was an involuntary bankruptcy case and his creditors decided when it was going to be filed and, therefore, when he could recover the assets. Similarly here, Ms. Adele didn't have control over the timing of the recovery of her assets because her counsel kept telling her, don't do it, don't do it. And she did recover them after the bankruptcy case was filed. Shortly after the bankruptcy case was filed, the appellate panel made an error of fact in this regard. They said Ms. Adele didn't recover the funds until eight months after the case was commenced, and that's not true. The record shows that right after the bankruptcy case was filed, Mr. Brent, Adele's bankruptcy counsel at that time, made a request for the checks verbally. He then made a written request in October. He lost the checks and made another request and finally received the funds back in December. The date that the appellate panel was using, the May date, was when the case was converted to Chapter 7 and there was a trustee appointed. Only at that point was there an independent fiduciary to give the money to. Before that time, Ms. Adele was a debtor in possession, which is akin to being the fiduciary, and she recovered the money shortly after a petition. How much did she recover? She recovered about $38,000, and this is about 20 percent of the so-called first 2005 transfers that were added to her. What happened to the rest of the money? The rest of the money, well, the thing is she recovered 20 percent of the gross transfer, but she recovered 100 percent of the transfers less, expenditures for funding a pension, for paying counsel, for paying regular living expenses, all of which are permissible under cases that were cited in our brief, and specifically the largest transfer at issue. After she filed the bankruptcy, the petition, did she continue to expend funds? She did continue to expend funds, and in any debtor in possession that's in Chapter 11. How did she spend those funds on? She spent them on the same things, living expenses, rent, car payments, but these are the same things that a Chapter 11 debtor in possession would be able to do. When you file bankruptcy as a Chapter 11 debtor, you're not prohibited from using your money. If you have a secured creditor, you would have to ask the court for permission to use your funds, but if not, you're permitted to use your funds in the ordinary course of business for regular expenses. Could you clear something up for me? Yes. Let's assume that she, well, the record, she transferred this money off, some of it to her close friend, right? She transferred funds in the name of her friend, that's correct, Your Honor. Right. And that was ostensibly for the purpose of protecting it from this potential unfortunate execution that she allegedly feared. That's correct, Your Honor. So she would just go to this friend of hers and say, I need money, so can you give me a check because I need money, or something? She would get money. There was a joint checking account on one of them. One account was a joint checking account, and she had access to those funds, and she would use them to pay her. You understand how this looks like a kind of an artifice? I understand your point, Your Honor. But the ultimate conclusion of that reasoning is that if somebody is under threat of execution and they have assets and they go out and buy a bologna sandwich, and then they don't go to that vendor and recover the money for that bologna sandwich so that they have 100 percent of their assets, that they're not entitled to the disclosure and recovery exception. And indeed, the court was dealing with a total transfer of real property, the recovery of which is an all-or-none proposition. Here we were dealing with funds, and the uses were found to be reasonable uses of the funds. They were fully accountable. This is the finding of the bankruptcy court, accepted by the appellate panel to be true, and that she recovered the balance of the funds. And this really goes to the reasoning underlying Adeeb. There's two interests that the court's trying to accomplish in a bankruptcy case. One is equitable distribution amongst creditors, and the other is to allow a debtor to discharge debts so that they don't fall for the rest of their life. And the idea of Adeeb is that you don't want to penalize somebody if they go out and recover the money by never letting them have a discharge, but you want to encourage them to get the money back. Well, Adeeb talks about getting a substantial amount of the money back. She got 100 percent of the funds, less regular uses. There's no prohibition against going out and using money to buy a sandwich. Even if the money was in the original account it was in, if she went out and made a car payment or something like that, that's not moving funds to hinder, delay, or defraud. That's just using funds for ordinary expenses. Let me ask you this. One thing that troubles me here, so in Adeeb, the court said, okay, before you file bankruptcy, before the petition is filed, you should recover all these funds. And there it was an involuntary bankruptcy, right? That's right. And in that case it was a real property, so it's an all-or-nothing proposition. You get it back or you don't get it back. Right. The other point that was raised. Now, here we have a, as Judge Fletcher says, it's a voluntary situation. That's correct. But you claim that there was advice of counsel involved here that prevented her. It's undisputed. That prevented her from trying to get the assets back before she filed her petition. Well, that dictated against her making a request for those funds back because her counsel gave her bad advice and told her to leave them where they are. Otherwise, everyone agreed that if you would have read Adeeb or counsel who said he didn't read Adeeb and wasn't aware of it, but if he was, he would have told her to recover the assets before the case, that she would have done it. She always followed her attorney's advice. There's a lot of manipulate. Now, I don't want to cast dispersion on people, folks who file bankruptcy, because it's a very necessary thing in many instances. But it seems like there's a lot of room for abuse in here. It's definitely a big concern to not have abuse in the bankruptcy case. But the Adeeb case was recognizing the fact, and the court said, we recognize as a practical matter a creditor that's faced with a creditor coming out for the assets might follow bad advice of counsel, might transfer funds to a friend. Well, even if he didn't know Adeeb, he's telling her, you know, I shouldn't be telling you this, but get your funds out of town. Well, this is a New York counsel who told her that. And the difference in this case is that there was a reasonable belief that there was a threat that somebody would violate a stay and take assets that they didn't have a right to take. In the other cases that were cited by the VAC, people were not prohibited by this. Well, she would have had remedies. She could have gone back into court. Well, anybody who would fund that could go back into court. Also illustrative on this point was the Bouchon case. It was cited by the appellate panel when it misapplied a de novo standard of review to find that Miss Adeli had the requisite intent. And Bouchon, which is really the converse of this case, the debtor owed money to his father-in-law. He said, my father-in-law is harassing me, so I moved money so he'd stop harassing me. The bankruptcy court in that case found there was no evidence in the record that you were being harassed by your father-in-law, and therefore no good reason for you to move your assets. On appeal, the BAP said, well, that's a logical conclusion from this fact pattern. It applied the proper standard of review, clearly erroneous, and found that it couldn't overturn that finding of fact. In this case, the bankruptcy court found there is a reason to believe, based on Miss Adeli's counsel testimony that was found to be credible in all respects, that she was being harassed, or that she thought that there was going to be an unlawful levy on her assets, and a logical conclusion drawn from that. The only basis for her thinking that she would be, that he would violate, was the lawyer saying maybe we can't trust him. Well, he got a judgment against her for $750,000 for probably misbehavior on her part, and now to say that Mr. Sachs is the bad guy doesn't bring... That wasn't before the court, it was just... But that doesn't bring... What basically Sachs is asking the court to believe is that Miss Adeli, who's an artist, who's untrained in business and legal matters, of course, should just cast aside the advice she's getting from her New York attorneys, again, that was accepted as true by the appellate panel, and go, no, I've read the case law. I know the law. I'm going to totally ignore your advice and not do what you say. Did you want to save some time for rebuttal? Yes, Your Honor. Thank you very much. Good morning. Good morning. May it please the Court. Nathan Schultz, Greenberg-Toronto LLP on behalf of the appellee Richard Sachs. Your Honor, this is a preliminary matter. I'd like to thank you for your careful review of the briefing. This is a pretty tortured factual record, and it's clear that you've got a good mastery of it. I also wanted to note that the opposing counsel in this matter throughout this case passed away in an accident last summer, and no disrespect to Mr. Arnold, but it's not quite the same not having Mr. Rankin here. But getting to the substance, I want to address any questions the Court has. I want to respond to some points that the counsel made and highlight some important reasons why the Court should affirm the BAP's decision here. And we focused on it in the opening, but we're talking only about the element of intent to hinder, delay, or defraud under Section 727A2A of the Bankruptcy Code. That's what's at issue. There were six issues on appeal discussed in the opening brief, but there's really only one, which is intent, and there are three subparts to that. And so I would like to cover those things. The first one is, does the debtor's admitted purpose that she made the transfers to protect, that's a quote from her testimony, those assets from a judgment creditor, does that constitute intent under Section 727A2A as a matter of law? The BAP found the answer is yes, and that's the right answer. The second question is, does the debtor's allegations that she made those transfers based on attorney advice, does it change that result? The answer is no. That's what the BAP found. That's the right answer. Third question. Why is that the right answer? No, yeah. It's because... I know you think it's the right answer, but why is it the right answer? Sure. The case law supports why it's the right answer. The requirement is to rely on the attorney advice defense. It has to be in good faith. And this Court's decision in Adiv says, what good faith means is that you didn't know that the purpose of the transfer was to hinder, delay, or defraud your creditors. As a matter of law, the debtor said here, I knew that what I was doing and my attorneys told me to do it because the purpose was to keep this money away from Mr. Sacks. She knew what the purpose was. That takes it outside of the good faith attorney advice. People call it an exception. I'm not sure it's an exception. I think it's a question. It's a tool to decide. Did she have the intent or not? And, for example, I was thinking about this, and I thought, God darn. Does it make any difference? There's been a lot made about this potential that Mr. Sacks somehow might violate the court order. Does that make any difference? No, it doesn't make any difference. And that's a central theme of, I think, the issues we should cover, which is playground wisdom. Two wrongs don't make a right. Okay? If a debtor actually, let's assume a debtor actually had reason to believe, which Your Honors have hit on an important point. There's no evidence that Mr. Sacks would have done anything other than the debtor saying, subjectively, I was afraid that he would. But let's say there was even evidence that he might do something extra judicially. Does that mean you should sanction the debtor to then also take the law into her own hands and transfer funds and act outside of the court system? That's not what the statute is designed to do. The statute is designed to disincentivize debtors from doing that and to incentivize them to make full disclosure and treat their assets not in a way of obscuring them and trying to hide things, but to be above board about it. So the answer to someone even legitimately fearing that someone's going to act extra judicially is to go into court and get relief for that. And they had a stay in place that said he couldn't execute on his judgment, and she had counsel. This isn't even a pro se debtor where you might say, well, she wasn't advised. She had no recourse. There was an economic justification. Whether any of those things would be good enough isn't before the court, but none of them are present here. She had counsel. They told her to do it. She knew the purpose. She made a decision at that point. She could either follow the advice of counsel and do something that was designed to force somebody that had a judgment against her, or she could not. She decided to do that. You can't go back later and say, well, because an attorney told me to do it, therefore I don't give blame for that, if you knew what was happening. And what I was going to say is that I sat around for a while and tried to think, when would the good faith exception apply? Is this just an empty, you know, because hardly any of the cases talk about it applying. The one Ninth Circuit case from 1936 case that did apply it was a case where the attorney said, there's a trust here and there are assets there, and those are subject to execution by your creditors. They're not really your property. They're outside of the sphere of anything a creditor might get access to, so you can do what you need to do with them. So the purpose of the transfer there wasn't to protect the asset from anybody. The debtor had some other, I don't think the opinion discusses it, but some other purpose for it. Here's another example. The debtor gets some tax advice, and the tax advice says, for tax purposes, transfer these assets into a trust or into an LLC. And that happens shortly before a bankruptcy case. The bankruptcy case is filed and someone says, look, you transferred the assets. Your purpose was to hinder or delay your creditors. I think there the debtor goes and says, look, the purpose was not to do that. I relied on good faith on my attorney advice, and my attorney's advice didn't say transfer these so your creditors can't get them. The attorney advice said transfer these because it's tax benefits. That's a good faith attorney advice. Well, in the first instance, the example that you gave from the old 9th Circuit case, the assets wouldn't be part of the estate. Right, exactly. And so the purpose wasn't to hinder a creditor because a creditor could never get them. You said there were three reasons. I kind of interrupted you on number two, so. Three reasons. And the third one is the Adib case, the disclose and recover exception. And the court correctly noted that, number one, applying that to a voluntary case is dicta. So whether it even applies in a voluntary case is dicta. We don't have a ruling from this court that says disclose and recover applies. But even if it did, again, go to the purpose of Adib. Adib is really, I view it as a policy case. It says even though the statute doesn't say transferred and remain transferred, we're going to read it that way because the whole point of the statute is to encourage debtors to do the right thing or to discourage them from doing the wrong thing. It goes back to two wrongs don't make a right. And in that case, the debtor did something wrong. He transferred things. He knew the purpose was to harm his creditors. But then he got some good advice. And the good advice said this is a mistake. You've got a problem. And what the debtor decided to do was to try to rectify it, to right the wrong. He tried to put everything back. He got interrupted in the middle, so he couldn't complete it. And the court was very clear that you had to find that if you were interrupted in the middle, that you were trying to rectify it and that you completed that full rectification shortly after, you know, you were involuntarily thrown into bankruptcy. Here this debtor didn't rectify or even try to rectify the wrong. The wrong was transferring the $208,000, keeping it in a friend's name. There were two accounts, and your honors are exactly right, one of them she had check writing privileges on. So she was just writing checks for things. The other one she went to the friend and asked for the money. Partway through that, $100,000 of that went into another account, her business account. She continued to spend that money. And that business account is important because what happened is the case filed and there's this stuff about Mr. Brent. He asked for it. It got lost. It came back. The timing. I think counsel's right that the BAP made a very small, and I don't think it's a material error in finding that, you know, there was something on her part that should be imputed and considered reflective of her intent, that the money didn't go to the trustee until May because he's right. Debtor in possession is the equivalent of a fiduciary, and Mr. Brent kept that money to the side at all times. I don't think that's evidence of anything. But what is is that that money in the corporation bank account, the $100,000 that came from the original $200,000, she never disclosed that when she filed the case. So, number one, you have a disclosure violation. Didn't she disclose to Brent, though, about that money, about the original transfers? Sure, she did. She may not have told him where it was, but she told him about the transfers. Absolutely, but the standard isn't did she disclose it to her own attorney so that they could try to figure out what's the narrow, exact right way to keep the benefit of the transfer but also not get hit for discharge? Brent said when he heard about that, this stinks. This is not good. But he said, I think your best bet in terms of whether you get nailed for it or not is to keep the money here. That's not trying to rectify the situation. Suppose he would have been, he says he wasn't familiar with the deed, but suppose had he been familiar with the deed, he would have said, well, here's what we got. You better get all that money back here before we file. And I think the Bankruptcy Court found that... What would be wrong with that? I mean, why wouldn't, you know... Sure, and look, he might have. The problem is that didn't happen. We're talking about supposition here. No, she said she would have done that. Sure. Had she been properly advised. And we don't know what would have happened at that point. Sachs might have been able to levy sooner. It might have forced her into bankruptcy sooner. There might have been a better recovery for the estate. The bottom line is there's no entitlement to the Adib defense. The Adib defense is all about let's encourage people to do the right thing. If someone's trying to do the right thing, we shouldn't penalize them. She didn't go to Mr. Brent and say, hey, how can I make this right for my creditors? I think I might have done something wrong. Can I fix it? What she said was, I think I might have done something wrong. How can I not get in trouble for it? Am I going to get in trouble for it? What do I need to do? The focus is even in the briefing. She was trying to preserve her discharge, which of course she would because that's the biggest issue in a bankruptcy case is do you get discharged or not. And it's a severe penalty for the court to take that away. And it only happens if you do something that's clearly not appropriate. And the statute is very clear on that. And so she was trying to preserve that ability. She wasn't trying to make things right for creditors. If she was trying to make things right for creditors, number one, when she filed the bankruptcy case, she could have told the whole truth instead of little bits and pieces of it. Two, if she was trying to make things right for creditors, she could have taken the money back from the corporation bank account, put it into the bankruptcy estate the way that she got back the $38,000. And on that $38,000, let's remember one point. They tell the story about Mr. Brent asked for the money, the checks were lost, it came back. One of those accounts, she had check writing privileges. She didn't need to ask anybody for it. She could have written a check to the bankruptcy estate herself. She didn't do it. There wasn't a manifest desire here to make creditors whole. It just doesn't fall within a deed, even if a deed applies in voluntary cases. This isn't the kind of behavior that you want to incentivize debtors to do. You don't want to incentivize them to take matters into their own hands, point their fingers at their attorney, even when they knew what was going on. This tells people go prophylactically, talk to an attorney about everything that you are going to do that you think is bad, and then you can shield yourself with it later. That's not the intent behind the issue. I think I've covered the three things that I wanted to cover. I'd close with there's the disclose and recover exception. This isn't a disclose and recover case. It's a hide and spend case, and the fact that what the assets were spent on happened to include some living expenses doesn't tell the whole story. There was a $40,000 pension that was funded that was later recovered. This debtor got some bad legal advice, but there's no question she took matters into her own hands. There's no grounds here to remember. I just had a curiosity. Has Sachs recovered anything? Absolutely nothing today. There's a Chapter 7 proceeding that's about to be wound up. I expect that there will be some distribution from that. I don't know how much it will be, but as of today, he's recovered $0 on his judgment. So his only hope is to preserve his claim. Right. He has a pending state court litigation that against her has been stayed that he would resume and seek to execute on his judgment. There are other claims in addition to the one that he got the judgment on. So the second transfers, as far as you're concerned, really aren't that critical because what you're looking to do is to preserve the denial of discharge. Well, the second transfers, I think, are additional evidence and additional grounds to deny it, but you only need one. And the first ones, I will readily admit, are the most compelling ones. I think there's a host of transfers that could each alone serve. In fact, I should correct one thing I said. He got $4,500 in July of 2005, three months before she filed, two months before she filed the case. There was one bank account where she forgot and left a little bit of money in there. He got that. He got $4,500. But he had a $750,000 judgment. Yes. The $727,000 was the face amount of the judgment. That was $727,000. Yes. It happens to be the same number as the statute, which is a strange coincidence. Thank you, Your Honor, for your time. Thank you. You have about a minute and a half, everybody. Thank you, Your Honors. Again, the quintessential issue in this case is whether Miss Adeli had intent to hinder, delay, or defraud Mr. Sachs. Everyone has made light of the fact that there was a stay in place prohibiting Mr. Sachs from executing on Miss Adeli's assets. And I would propose to the court that if there's a stay prohibiting somebody from taking an asset. Well, what evidence is there in the record that Mr. Sachs intended to violate the stay? What evidence is there? The evidence, and it was accepted by the Vanquish Court, made a finding of fact not accepted by the appellate panel in its review, was that based on the advice she got from her counsel. No, no, I'm not asking her the advice of counsel that maybe someday this guy might do something bad. But what evidence did she have? What's in the record? They were disputing whether or not the stay was even in effect and prohibited him from executing on the assets. The second point is that the question of intent and good faith reliance on advice of counsel are questions of law that are subject to a clearly erroneous standard. And the bankruptcy appellate panel, which is composed of bankruptcy judges, basically made it an issue of law so that they could reach a conclusion they thought they would have reached if the case had been before their court. The conclusion that was reached by the Bankruptcy Court is a reasonable conclusion to be drawn from the evidence that was presented to it and, therefore, can't be clearly erroneous. Lastly, to the deep disclosure and recovery exception, the counsel for Mr. Sachs has tried to make an issue again about whether she fully disclosed the transfers or not. Well, this was a finding of fact of the Bankruptcy Court that wasn't found to be clearly erroneous. So she did fully disclose with her bankruptcy papers all of the transfers. You're over your time. Thank you. Thank you so much. Thank you, counsel. We appreciate your arguments in this case. There's a lot to it, and we'll submit it at this time. And that ends our session for today. All rise. Thank you.
judges: Ezra, Fletcher B. , Paez